UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DENG DENG MAJOK AREJ,

     Petitioner,

     v.

BRIAN ENGLISH,

     Respondent.

CAUSE NO. 3:26cv713 DRL-SJF

OPINION AND ORDER

Immigration detainee Deng Deng Majok Arej filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Arej filed a reply. The petition is ready to be decided.

Mr. Arej was born in South Sudan, which was then a part of Sudan.[1] He entered the United States in 2005 as a refugee. Prior to 2014, Mr. Arej was convicted of assault in Kentucky and was sentenced to two years of incarceration. On April 23, 2014, while in immigration custody, an immigration judge ordered him removed to South Sudan. On September 28, 2015, an official from the South Sudan embassy advised Mr. Arej that South Sudan would not issue any travel documents within the foreseeable future. In January 2015, Mr. Arej filed a motion to reopen removal proceedings to allow him to seek asylum

---

[1] For this factual background, the court primarily relies on the parties' filings in this case but also includes relevant facts from Mr. Arej's prior federal court proceedings in *Mjok v. Lynch*, 3:15-cv-1091 (S.D. Ill. filed Oct. 2, 2015), and in *Arej v. Sessions*, 852 F.3d 665 (7th Cir. 2017).

from South Sudan, which the Board of Immigration Appeals (BIA) denied and Mr. Arej appealed to the Seventh Circuit Court of Appeals. On November 4, 2015, United States Immigration and Customs Enforcement (ICE) released him on conditions of supervision. On March 28, 2017, the Seventh Circuit granted the motion to reopen removal proceedings and remanded Mr. Arej's case to the BIA for further proceedings. On November 15, 2019, Mr. Arej was charged with child molestation in Indiana. On March 11, 2020, with Mr. Arej absent due to his pretrial detention, an immigration judge ordered him removed to South Sudan, or, alternatively, to Sudan. On September 14, 2020, he was convicted on his charge of child molestation and was sentenced to seven years of incarceration.

On March 3, 2026, Mr. Arej transferred from criminal custody to immigration custody. According to his correspondence with ICE officials from March and April, South Sudan sought to interview him as part of the travel document application process. On May 27, 2026, ICE notified him that it had conducted a custody review and determined that it would keep Mr. Arej in custody because his removal would be effectuated within the reasonably foreseeable future. On June 29, 2026, Mr. Arej participated in an interview with the South Sudan embassy. He currently remains in immigration custody at the Miami Correctional Facility.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Arej's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration

detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang, v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period". *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022). These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] The Warden relies on Section 1231(a)(6) as the basis for Mr. Arej's current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit

conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). The parties appear to agree that Mr. Arej's detention is now governed by § 1231(a)(6). However, they dispute the date the removal order became administratively final because this date affects the calculation of the six-month period of presumptive reasonableness. According to Mr. Arej, his removal order became administratively final in April 2014, and the six-month

5

period of presumptive reasonableness expired in December 2014. According to the respondent, the operative removal order is the March 2020 order, and the six-month period did not begin to run until Mr. Arej entered immigration custody on March 3, 2026, and has not yet expired.

Mr. Arej elaborates that, because he reopened removal proceedings only to seek asylum, the order compelling his removal to South Sudan remained administratively final. Mr. Arej's position has some legal support. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 540 (2021) ("Because the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise administratively final reinstated order of removal."). On this record, the court is unable to discern whether the finality of the removal order has been disturbed, but the court will assume for purposes of this opinion that Mr. Arej's detention exceeds the six-month period set forth in *Zadvydas* and rule alternatively.

The court turns to whether his removal is reasonably foreseeable. The government intends to remove Mr. Arej to South Sudan, and Mr. Arej's showing consists of the length of his time in detention and the government's inability to remove him to South Sudan in 2014 and 2015. South Sudan has accepted individuals removed from the United States in recent years, so it is clear that South Sudan has since altered its position of declining to issue any travel documents. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 122 (D. Mass. 2026) (government removed six class members to South Sudan in May 2025); ECF 1 n.4 (government removed ten individuals to South Sudan in May 2026). Though Mr. Arej refers to this recent development as a "paltry increase," he offers no

statistics or data to support this allegation. Moreover, Mr. Arej's recent interview with South Sudan alone suggests some willingness to accept individuals for removal or to issue travel documents.

Further, Mr. Arej's immediate span of detention spans only four months, and the correspondence between Mr. Arej and the ICE officials show that the government has been working to remove him to South Sudan. Less than a month ago, on June 29, 2026, the government facilitated Mr. Arej's interview with South Sudan. There is no quantum of administrative delay in this sequence of events that might suggest his removal is not reasonably foreseeable. Indeed, to the contrary, it seems today that removal remain a real likelihood with wheels in motion. Because Mr. Arej has not satisfied his preliminary burden of providing good reason to believe that his removal will not occur in the reasonably foreseeable future, the court cannot grant habeas relief on this claim.

Mr. Arej also argues that he is entitled to habeas relief because the government did not provide him with reasons for revoking his supervised release or an informal initial interview as required by 8 C.F.R. § 241.13(i)(2). "[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.").

Federal regulations require the government to provide notice of the reasons for revoking supervised release "upon revocation" and require the government to provide an initial informal interview "promptly" after a noncitizen's return to immigration

custody to afford him an opportunity to respond to the reasons for revocation. 8 C.F.R. § 241.13(i)(3). Regulations further require the government to provide periodic custody reviews if the noncitizen remains in custody following the initial informal interview, the first of which "will ordinarily be expected to occur within approximately three months after release is revoked." *Id.*; 8 C.F.R. § 241.4(l)(3). "That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." 8 C.F.R. § 241.4(l)(3).

The notice of revocation and initial informal interview serve a substantially similar purpose of allowing detainees to contest the reasons for revocation and the justification for continued detention. Here, the government might not have allowed Mr. Arej an opportunity to dispute the revocation of his supervised release or his detention promptly after his transfer to immigration custody as contemplated by the regulations, but he was granted another opportunity to dispute them through a custody review. Given the custody review, the court cannot find that this regulatory violation warrants Mr. Arej's release, and the lesser measure of requiring the government to reiterate reasons for revocation and an initial informal interview would serve no useful purpose. Consequently, this claim is not a basis for habeas relief. Because no other claims remain, the court will deny the habeas petition.

For these reasons, the court DENIES the amended habeas petition (ECF 5) and DIRECTS the clerk to close this case.

SO ORDERED.

July 22, 2026                                  s/ Damon R. Leichty
                                              Judge, United States District Court